***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive additional evidence, rehear the parties or their representatives, and having reviewed the competent evidence of the record, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Homick.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act, and the North Carolina Industrial Commission has jurisdiction of the parties and the subject matter.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is Liberty Mutual Insurance Company.
4. Plaintiff's average weekly wage is $542.22 per week, which yields a compensation rate of $361.50.
5. Defendants deny that plaintiff sustained an injury on or about October 27, 2008 and October 28, 2008.
6. Defendants deny that plaintiff's alleged injury arose out of and in the course of employment and deny that plaintiff's alleged injury is compensable.
 ***********
The following were entered into evidence as:
 EXHIBITS
1. Stipulated Exhibit #1: Pre-Trial Agreement
2. Stipulated Exhibit #2: documents, including North Carolina Industrial Commission forms, responses to discovery, medical records and employment records, paginated from 1 through 200. *Page 3 
3. Defendants' Exhibit 1: Incident Report dated December 2, 2008
4. Defendants' Exhibit 2: October 28, 2009 Employer Report
5. The issues before the Full Commission for determination are whether plaintiff sustained a compensable injury by accident on October 27, 2008 and/or October 28, 2008; if so, are plaintiff's medical condition and alleged disability causally related to the alleged incidents; and whether plaintiff is entitled to benefits under the Act.
6. The testimony of plaintiff, a native Spanish speaker, was translated by Julia Davis. At the hearing, the parties stipulated that Ms. Davis possesses sufficient experience and education speaking and understanding English and Spanish to qualify as a Spanish language interpreter pursuant to Rule 616 of the Workers' Compensation Rules of the North Carolina Industrial Commission.
 ***********
Based upon all the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 20 years old. Plaintiff is originally from Puerto Rico, is a native Spanish speaker and completed nine grades of schooling in Puerto Rico. Prior to working for defendant-employer, plaintiff worked as an upholsterer at Broyhill Furniture in Lenoir, North Carolina from 2005 until January 2008.
2. Plaintiff began working for defendant-employer in June 2008 as an ottoman upholsterer. Plaintiff's job involves applying the poly-cushioning and fabric to the ottoman frame using a staple gun. Plaintiff works at a station or table approximately 25 inches tall, and after completing each ottoman he takes it to a conveyor, which is approximately four feet from *Page 4 
his work station and is approximately 33 inches high. The ottomans vary in size and weight from the smallest, at fifteen to twenty pounds, to the largest storage-type ottoman, weighing more than 60 pounds. Depending upon the size of the ottoman, employees in the ottoman cell occasionally assist one another in carrying finished ottomans from their work stations to the conveyor. Plaintiff testified that he upholstered approximately ten to twelve ottomans per day.
3. According to information contained in plaintiff's personnel file, which was admitted into the record of evidence, plaintiff's job duties were in the heavy range, requiring frequent lifting of 25 to 50 pounds and occasional lifting of 50 to 100 pounds.
4. Plaintiff's assistant supervisor, Becky Lamber, testified that she considered plaintiff to be a good worker.
5. On Monday, October 27, 2008, while lifting an ottoman, plaintiff felt pain in his lower back. Plaintiff did not report the incident as he thought it was minor. Plaintiff also thought the pain he experienced was due to being tired. Plaintiff completed his work shift and returned home, where he took two Tylenol tablets for the pain that evening.
6. Plaintiff testified that the following day, Tuesday, October 28, 2008 at approximately 9:00 a.m., he lifted another heavy ottoman and felt a pop in his back. Plaintiff experienced pain that radiated into his left leg. He was unable to continue working and informed Becky Lambert, the assistant work cell supervisor, that his back was hurting. Plaintiff showed Ms. Lambert a small raised area on his lower back and requested permission to report to Lynn Brooks, the nurse for defendant-employer. Plaintiff testified that he did not explain to Ms. Lambert that he had injured himself at work because she did not speak Spanish.
7. Plaintiff reported to Nurse Brooks who testified that she observed a raised area on plaintiff's lower left back that was about two to three inches across, which did not move when *Page 5 
palpated. Nurse Brooks also does not speak Spanish and as a consequence, she later called another employee, Florencio Chavez to interpret for her. Nurse Brooks testified that it was her understanding that plaintiff's back pain commenced the night before and, as plaintiff did not mention a specific injury at work that morning, she did not record the event as a workers' compensation injury.
8. Nurse Brooks testified that she did not know the cause of plaintiff's symptoms and recommended that a physician examine plaintiff. Accordingly, Nurse Brooks gave plaintiff a note written in English with the name and telephone number of defendant-employer's health care provider and a brief description that plaintiff had back pain since the previous day. Nurse Brooks also wrote "Not Worker's Comp." on the note.
9. Plaintiff presented to the Catawba Valley Medical Center Emergency Room, where a telephone interpretation service was used to translate. The Emergency Room note reflects that plaintiff experienced lower back pain while lifting a heavy object at work, approximately a week and a half ago. Plaintiff testified that there were problems with the interpretation. Both he and the telephone interpreter had difficulty understanding each other and the interpreter confused the doctor's questions with plaintiff's responses to other questions. Based on the difficulties in the translation, the Full Commission finds that any inconsistency as to when plaintiff's injury occurred is reasonably related to miscommunication or mistranslation between plaintiff and the telephone translation service. The Full Commission finds plaintiff credible concerning the two lifting incidents at work.
10. The physician at the Catawba Valley Medical Center Emergency Room diagnosed a lumbar strain and placed the employee on work restrictions of no lifting over 20 pounds and no prolonged bending, twisting, stooping, or squatting. *Page 6 
11. Plaintiff's fiancée, Alejandra Munoz, testified that she saw plaintiff before work on October 28, 2008 and he had no physical problems. Plaintiff called Ms. Munoz later that morning to tell her that he had injured himself lifting furniture, and specifically that he had felt a pop in his back and experienced back pain. Ms. Munoz, who works as a secretary at a non-profit workers' center, asked her supervisor, Juan Montes, who also speaks Spanish, to speak with plaintiff by telephone regarding the incident.
12. Mr. Montes works for the Western North Carolina Workers' Center, a non-profit foundation organized primarily to assist low wage and immigrant workers. Mr. Montes had only met plaintiff briefly on one other occasion. Mr. Montes testified that after plaintiff explained he had injured himself lifting furniture at work, he told plaintiff to return to work and explain that the injury was work-related.
13. Following the advice of Mr. Montes, plaintiff returned to defendant-employer where he spoke to Nurse Brooks, and Kathy Eades, the Human Relations Manager. Ms. Eades testified that when she asked plaintiff what had occurred, plaintiff replied that he did not know and that it may have been from lifting the furniture at work. Plaintiff testified that he attempted to explain to Ms. Eades that his injury was a work injury and that he had informed Florencio Chavez, a department supervisor, he had injured himself while lifting furniture. Florencio Chavez testified that plaintiff did state that his back was hurting since the night before and that he had a lump on his back, which Mr. Chavez observed.
14. Plaintiff further testified that he asked Ms. Eades to revise the paper that Nurse Brooks had given him to reflect that his injury was a work injury so he would be able to obtain medical treatment, but that Ms. Eades had refused. *Page 7 
15. Plaintiff testified that he was in too much pain to continue working and on October 29, 2008, presented to Granite Falls Medical Center, where he saw Roger Austin, a physician's assistant. Through an interpreter, plaintiff explained to Mr. Austin that he had injured his back while moving furniture at work the previous day, that he heard a "pop" and then had severe back pain. Mr. Austin prescribed Ibuprofen and Vicodin for pain as well as Flexeril and advised plaintiff to return in two weeks.
16. Plaintiff's back pain continued to increase and on November 6, 2008, plaintiff was referred for an MRI of his lumbar spine. The MRI revealed a disc bulge and facet arthropathy at the L5-S1 level, as well as a posterior annular tear, with an intravertebral disc herniation/Schmorl's node.
17. On November 11, 2008 Mr. Austin referred plaintiff for physical therapy and pain management. However, as plaintiff was unable to complete physical therapy due to his pain, he was referred to Dr. Graham Bullard and Dr. Williams Evans, pain management specialists at Southeast Pain Care, for evaluation and treatment of his lower back symptoms. On December 24, 2008 Dr. Evans performed an epidural steroid injection at L5-S1, which did not provide relief.
18. On December 15, 2008, plaintiff presented to Dr. Quanwei Zhang, a neurologist at Metrolina Neurological Associates. Dr. Zhang opined that plaintiff had lumbar radiculopathy due to the disk tear and recommended electromyography (EMG), nerve conduction velocity (NCV) tests, and an evaluation by a spine specialist. On February 2, 2009, Dr. Zhang wrote a general letter indicating that plaintiff was unable to return to work due to his severe low back pain and the L5-S1 disk tear. *Page 8 
19. On February 2, 2009, plaintiff presented to Dr. Andrew Sumich, a physical medicine and rehabilitation physician at Carolina Neurosurgery and Spine in Charlotte, with complaints of severe low back and leg pain. Dr. Sumich noted that the MRI showed evidence of a posterior annular tear at L5-S1 with intravertebral herniation/Schmorl's node. Dr. Sumich ordered a myelogram/CT scan.
20. Dr. Sumich testified that a Schmorl's node is a type of intravertebral disc herniation, which is usually an incidental finding. Schmorl's nodes are usually not painful, although they can be in some individuals and can be congenital or hereditary. Schmorl's nodes can also be degenerative or traumatic in nature. Dr. Sumich further testified that when degenerative in nature, a Schmorl's node is more of a chronic finding, and there are degenerative changes in the spine and weakening of the endplates, such that disc material can fill those defects in the vertebral body. Dr. Sumich testified that plaintiff may have had a preexisting defect in his S1 vertebra prior to October 2008, and that the herniation of the disc into the S1 vertebra could have occurred over a period of time, rather than acutely.
21. A CT/myelogram performed on February 6, 2009 revealed an L5-S1 posterior and superior central S1 herniation measuring one centimeter. On February 16, 2009, Dr. Sumich discussed possible surgical and conservative treatment options with plaintiff.
22. On February 20, 2009, plaintiff was evaluated by Dr. Paul Kim, a neurosurgeon at Carolina Neurosurgery and Spine. Dr. Kim reviewed plaintiff's radiological studies and opined that they demonstrated a probable atypical intravertebral disc herniation/Schmorl's node in the posterior aspect of the superior end plate of S1 in the midline. Dr. Kim recommended continued conservative treatment and ordered physical therapy. *Page 9 
23. On April 8, 2009 and April 24, 2009, plaintiff returned to Dr. Kim to discuss possible surgical options as he had been unable to participate in a full course of physical therapy due to his discomfort. On April 24, 2009, Dr. Kim recommended a lumbar discogram, which was performed by Dr. Sumich on May 6, 2009, revealing concordant back pain at L5-S1. A post-discogram CT scan revealed a small annular tear at L5-S1 and a probable Schmorl's node in the superior endplate of the S1 vertebral body.
24. As conservative treatment had been unsuccessful in resolving plaintiff's symptoms, Dr. Kim recommended proceeding with an L5-S1 anterior lumbar interbody fusion, which he performed on June 23, 2009. Although Dr. Kim has not seen plaintiff since he left the hospital, he noted that plaintiff significantly improved shortly after surgery.
25. There was no medical evidence of record indicating that plaintiff had any history of back problems prior to October 27 and 28, 2008. In addition, prior to these dates, plaintiff was able to perform his job satisfactorily, as confirmed by Ms. Munoz and also plaintiff's supervisors.
26. On the issue of causation, Dr. Kim, the neurosurgeon who performed plaintiff's anterior lumbar interbody fusion, opined that the evidence revealed that plaintiff's back symptoms were related to the October 28, 2008 injury. Dr. Kim further opined that plaintiff's severe acute onset of pain would not be inconsistent with the imaging studies performed and the demonstrated intravertebral disc herniation. Dr. Kim opined that plaintiff has been and continues to be unable to work since the time he began treating plaintiff on February 20, 2009.
27. Dr. Zhang, a neurologist, testified that it was possible that the events on October 27 and 28, 2009 caused plaintiff's back condition. Dr. Zhang further testified that he never found any source more likely than the injury at work to have produced plaintiff's back *Page 10 
symptoms. On February 26, 2009, plaintiff presented to Dr. Zhang for the last time, at which time Dr. Zhang opined that plaintiff was unable to return to work.
28. Mr. Austin, the physician's assistant who has treated plaintiff for his back pain since October 29, 2008, opined that plaintiff has been unable to return to work since that date.
29. Considering the totality of the medical evidence, on direct and cross examination, the Full Commission finds that on Monday, October 27, 2008, plaintiff experienced an injury by accident to his lower back when he lifted an ottoman while performing his duties as an upholsterer with defendant-employer. As plaintiff did not consider the injury serious, he returned to work the next day.
30. The Full Commission finds that on the following day, Tuesday, October 28, 2008, plaintiff experienced a second injury by accident to his lower back while working for defendant-employer when he lifted another ottoman and experienced lower back pain that radiated into his left leg. This injury was more severe and rendered plaintiff unable to return to work.
31. As a result of his injuries on October 27 and 28, 2008, the greater weight of the medical evidence shows that plaintiff has been unable to earn the same or greater wages as he was earning in the same or any other employment since October 28, 2008.
32. The Full Commission finds that the medical treatment that plaintiff has received for his back condition, including but not limited to the L5-S1 anterior lumbar interbody fusion performed on June 23, 2009, treatment at the Catawba Valley Medical Center Emergency Room, by Roger Austin, a physician's assistant, Dr. Quanwei Zhang, Dr. Andrew Sumich, Dr. William Evans/Southeast Pain Care Clinic and Dr. Paul Kim, is reasonably required to effect a cure or give relief for plaintiff's work injuries on October 27 and 28, 2008. *Page 11 
33. Plaintiff received short-term disability benefits from defendant-employer's wholly funded accident and sickness disability policy commencing on the eighth day of plaintiff's disability. Plaintiff received $100.00 per week for 13 weeks.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 27 and 28, 2008, plaintiff sustained compensable injuries by accident as a result of specific traumatic events, while lifting furniture at work, which resulted in injury to his lower back. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of plaintiff's compensable injuries by accident on October 27 and 28, 2008, plaintiff was disabled and unable to earn the same or greater wages as he was earning in the same or any other employment from October 28, 2008, and continuing. As a result, plaintiff is entitled to receive temporary total disability compensation at the rate of $361.50 per week commencing October 28, 2008, and continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. Defendants are entitled to a credit against the indemnity benefits due plaintiff in the amount of $1,300.00, which plaintiff received pursuant to a short-term disability program wholly funded by defendant-employer. N.C. Gen. Stat. § 97-42.
4. As a direct and proximate result of plaintiff's compensable injuries by accident on October 27 and 28, 2008, plaintiff is entitled to payment by defendants for all medical expenses incurred or to be incurred for his lower back, including but not limited to the L5-S1 anterior lumbar interbody fusion performed on June 23, 2009, treatment at the Catawba Valley Medical *Page 12 
Center Emergency Room, by Roger Austin, a physician's assistant, Dr. Quanwei Zhang, Dr. Andrew Sumich, Dr. William Evans/Southeast Pain Care Clinic and Dr. Paul Kim, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved below, defendants shall pay temporary total disability compensation to plaintiff at the rate of $361.50 per week from October 28, 2008, and continuing until further Order of the Commission. Compensation that has accrued shall be paid to plaintiff in a lump sum, also subject to the attorney's fee as awarded below.
2. Pursuant to N.C. Gen. Stat. § 97-42, defendants are entitled to a credit against the indemnity benefits due to plaintiff in the amount of $1,300.00 that plaintiff received pursuant to a short-term disability program wholly funded by defendants.
3. Defendants shall pay all past and future medical expenses incurred or to be incurred as a result of plaintiff's compensable injury by accident to his lumbar spine, including but not limited to the L5-S1 anterior lumbar interbody fusion performed on June 23, 2009, treatment at the Catawba Valley Medical Center Emergency Room, treatment by Roger Austin, a physician's assistant, Dr. Quanwei Zhang, Dr. Andrew Sumich, Dr. William Evans/Southeast Pain Care Clinic and Dr. Paul Kim, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. *Page 13 
4. A reasonable attorney's fee of 25% of the compensation awarded herein is approved for counsel for plaintiff. Of the accrued amount, defendants shall pay 25% directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
5. Defendants shall pay the costs.
This 17th day of May 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 14